IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JULIE'S INC., )
 )
        Plaintiff, )
 )
    v. )      1:20CV853
 )
THE HANOVER INSURANCE )
GROUP, INC. and )
THE HANOVER AMERICAN )
INSURANCE COMPANY, )
 )
        Defendants. )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on Defendants The Hanover Insurance Group, Inc. and The Hanover American Insurance Company's ("Defendants") motion to dismiss for failure to state a claim pursuant to Federal Civil Procedure Rules 12(b)(6) and 15. (Docket Entry 17.) Plaintiff Julie's Inc. ("Plaintiff") has filed a response in opposition to Defendants' motion. (Docket Entry 20.) For the reasons that follow, it is recommended that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff owns and operates several retail clothing stores in North Carolina and South Carolina. (*See* Am. Compl. ¶ 1, Docket Entry 13.) To protect its business properties, Plaintiff purchased an "all-risk" commercial insurance policy ("Policy") from Defendants with

coverage beginning January 1, 2020. (*Id.* ¶¶ 2-4; *see also* Policy, Docket Entry 13-1 at 1-300.)[1] Under the Policy, Defendants agreed to compensate Plaintiff for "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (Am. Compl. ¶ 26; *see also* Policy at 41.) "Covered Causes of Loss" is defined as "[r]isks of direct physical loss unless the loss is" excluded or limited by the Policy. (Policy at 43.)

In pertinent part, the Policy also includes (1)"Business Income" coverage, requiring Defendants to pay for income lost due to suspension of business caused by a direct physical loss of or damage to Plaintiff's insured properties; (2) "Extra Expense" coverage that pays for additional expenses that are incurred during the "period of restoration" after suspension of business operations; and (3) "Civil Authority" coverage which is triggered when a civil or governmental authority prohibits access to a property due to damage or losses to surrounding properties. (Am. Compl. ¶¶ 4-5; Policy at 47, 49-50.) However, the Policy contains a coverage exclusion for damage or loss caused "directly or indirectly" by "[a]ny virus . . . that induces or is capable of inducing physical distress, illness or disease" ("Virus Exclusion"). (*See* Am. Compl. ¶ 94; Policy at 77, 79.)

On March 11, 2020, COVID-19 was declared a global pandemic by the World Health Organization. (Am. Compl. ¶ 45.) In response to the growing public health threat posed by COVID-19, North Carolina Governor Roy Cooper declared a state of emergency. (*Id.* ¶ 67; *see also* Docket Entry 13-1 at 308-314.) Governor Cooper issued a series of additional executive orders, including Executive Order No. 121 on March 27, 2020, which ordered all

---

[1] Unless otherwise noted, all citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

"non-essential business and operations" to cease. (Am. Compl. ¶ 69; *see also* Docket Entry 13-1 at 325.) The effect of this order remained in place until May 20, 2020. (*See* Am. Compl. ¶ 71.) While non-essential business was permitted to resume, restrictions on the maximum occupancy of retail properties persisted. (*Id.* ¶¶ 71-73; *see also* Docket Entry 13-1 at 339-370.) Plaintiff's properties in South Carolina were subject to similar orders and restrictions as a result of executive orders issued by Governor Henry McMaster. (Am. Compl. ¶¶ 75-76; *see also* Docket Entry 13-1 at 372-386.)

In March 2020, in response to the executive orders and the ongoing pandemic, Plaintiff was "forced to suspend business operations." (Am. Compl. ¶ 6.) Plaintiff alleges that as a "direct result of the COVID-19 pandemic and the Closure Orders," Plaintiff has incurred, and continues to incur, "direct physical loss of or damage to property, a substantial loss of business income and additional expenses covered under the Policy." (*Id.* ¶ 88.) Plaintiff has submitted a claim for business interruption, civil authority, and/or extra expense coverage, which was subsequently denied by Defendants by letter on June 18, 2020. (*Id.* at ¶¶ 7-8; *see also* Docket Entry 13-1 at 303-306.)

Plaintiff alleges that Defendants wrongfully denied its claims for Business Income, Extra Expense, and Civil Authority coverage. (Am. Compl. ¶ 8.) According to Plaintiff, its insured properties suffered "direct physical loss of or damage" caused by COVID-19, triggering coverage under the relevant provisions. (*Id.* ¶¶ 44, 52.) Plaintiff further alleges that the Virus Exclusion does not preclude coverage under these provisions, and that Defendants should be estopped from enforcing the exclusion on grounds of regulatory estoppel and general public policy. (*Id.* ¶¶ 95, 108.) Plaintiff's claim for regulatory estoppel stems from

3

allegations that insurance industry trade groups, on behalf of Defendants, made false representations to state regulators that virus exclusion clauses were only meant to clarify that such coverage had never been in effect and only intended to be included when courts had previously found that policies had covered disease causing agents. (*Id.* ¶¶ 108-116.)

Plaintiff seeks a declaratory judgment that its Policy covers the losses, as well as damages for breach of contract. (*Id.* ¶¶ 123-140.) Defendants have submitted a motion to dismiss for failure to state a claim. (Docket Entry 17.)

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may seek dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In other words, the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly,* 550 U.S. at 570). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely

4

> consistent with a defendant's liability, it stops short of the line
> between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* Further, a court should not "conjure up questions never squarely presented." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

A motion to dismiss pursuant to Rule 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). Rule 8 does not, however, unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Id.* at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

5

## III. DISCUSSION

Defendants move for dismissal of the Amended Complaint on three grounds. First Defendants contend that Plaintiff's claims are barred by the Policy's Virus Exclusion. (Docket Entry 10 at 10-17.) Next Defendants contend that Plaintiff is not entitled to Business Income or Extra Expense coverage because Plaintiff did not incur any direct physical loss of or damage to covered property. (*Id.* at 17-20.) Lastly, Defendants contend that Plaintiff is not entitled to Civil Authority Coverage. (*Id.* at 20-22.)

### A. Virus Exclusion

In a diversity suit involving a contract such as this, the Court applies the law of the state in which the final step to make a binding contract occurred. *Fortune Ins. v. Owens,* 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). The parties do not dispute that North Carolina law governs this action. (*See* Docket Entry 18 at 9; Docket Entry 20-1 at 4.) Contract interpretation, including a determination of the meaning of language in an insurance policy, is a question of law for the Court. *See Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). "As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 505, 246 S.E.2d 733, 777 (1978). "The insurer has the burden to show an exclusion applies." *Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co. of Am.*, No. 1:20-CV-437, 2020 WL 7024882, at *3 (M.D.N.C. Nov. 30, 2020) (unpublished) (citation omitted).

Defendants contend that the Virus Exclusion unambiguously bars coverage for any losses attributed to COVID-19 as expressly pled by Plaintiff. (Docket Entry 18 at 10-11.) The undersigned agrees. The Virus Exclusion in the Policy provides that Defendants "will not pay

6

for loss or damage caused directly or indirectly by . . . [a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Docket Entry 13-1 at 77, 79.) Thus, this Policy has expressly excluded coverage for any loss or damage caused directly or indirectly from any virus. Additionally, Plaintiff pleads that COVID-19 is "highly contagious respiratory virus," and that it is the direct cause of Plaintiff's losses to its properties. (*See* Am. Compl. ¶¶ 6, 28, 56.) Furthermore, Plaintiff pleads that the civil authority orders were put in place to "prevent the spread of COVID-19." (*Id.* at ¶¶ 6, 66, 81.)

This Court recently addressed this issue with similar virus exclusion provisions and comparable allegations from other business plaintiffs. *See Natty Greene's*, 2020 WL 7024882, at \*1-4. Similar to the case at hand, the *Natty Greene's* plaintiffs alleged that their insurance policies covered business income losses sustained due to the COVID-19 pandemic and the resulting executive orders issued that suspended business operations. *Id.* at \*1. United States District Judge Catherine C. Eagles from this Court concluded that each policy expressly excluded coverage for loss or damage cause by any virus. *Id.* at \*3.[2] The Court further found that based on the allegations, "the 'Plaintiffs have pleaded that COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the

---

[2] Two plaintiffs were excluded from the Court's ruling for other reasons. *See Natty Greene's*, 2020 WL 7024882, at \*4.

community.'" *Id.* (citing *Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, –––– F.Supp.3d ––––, ––––, 2020 WL 4724305, at *6 (W.D. Tex. Aug. 13, 2020)).

Consistent with the holding in *Natty Greene's*, the undersigned here concludes that the Policy's Virus Exclusion expressly bars Plaintiff's claims for damages incurred due to COVID-19. Plaintiff's arguments to the contrary are unpersuasive. First, the language in the Policy's Virus Exclusion is not as ambiguous as Plaintiff contends. While any ambiguity or uncertainty as to meaning of words in an insurance policy must be resolved in favor of the policyholder, *see Wachovia Bank*, 276 N.C. at 354, 172 SE.2d at 522, ambiguity is not established simply by the fact that the policyholder and company disagree as to its meaning. *Id.* Ambiguity only exists when, in the opinion of the court, "the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Id.* (citation omitted). If no ambiguity exists, the court must strictly enforce the contract as is, and may not "remake" the contract. *Id.* (citation omitted).

Here, the plain language of the Policy is not susceptible to any reasonable interpretation other than that it excludes coverage for damages caused by a virus or bacteria. Thus, given the effect of the Policy's terms, Plaintiff's coverage claims should be rejected. *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962) ("When the language of a contract is clear and unambiguous, effect must be given to its terms, and the court, under the guise of constructions, cannot reject what the parties inserted or insert what the parties elected to omit.").

Plaintiff urges the adoption of the holding in *Urogynecology Specialist of Florida v. Sentinel Ins. Co.*, which determined a virus exclusion to be ambiguous. *See* 489 F.Supp.3d 1297, 1302

(M.D. Fla. 2020). However, in that case the court was unwilling to make a ruling on the merits of the language because the coverage forms to which the virus exclusion applied were not provided. *Id.* Tellingly, the same district court subsequently refused to follow *Urogynecology* when determining whether a similar virus provision barred a plaintiff's claim for COVID-19 related business interruption coverage. *See Edison Kennedy, LLC v. Scottsdale Ins. Co.*, Case No. 8:20-cv-1416-T-02SPF, 2021 WL 22314, at *7-8 & n.12 (M.D. Fla. Jan. 4, 2021) (distinguishing *Urogynecology* and dismissing claim under virus exclusion "for loss or damage caused by or resulting from any virus . . . that induces or is capable of inducing physical distress, illness or disease"); *see also Tanq's Inc. v. Scottsdale Ins. Co.*, No. 6:20-CV-2356-ACC-GJK, 2021 WL 1940291, at *3, n.2 (M.D. Fla. Apr. 16, 2021) (unpublished) (the parties in *Urogynecology* "did not provide the Court with all the relevant coverage forms that were modified by the virus exclusion").

Plaintiff also cites several non-binding state court decisions from other jurisdictions. (Docket Entry 20-1 at 7.) While it is recognized that a few courts have found similar exclusions ambiguous, these are not cases sufficiently persuasive to support departing from this Court's recent holding in *Natty Greene's* nor from other district court decisions favoring application of similar virus exclusion provisions. *See e.g.*, *Mena Catering, Inc. v. Scottsdale Ins. Co.*, No. 1:20-CV-23661, 2021 WL 86777, at *9 (S.D. Fla. Jan. 11, 2021) (unpublished) (listing cases and dismissing claims with similar virus exclusions); *Vizza Wash, LP v. Nationwide Mut. Ins. Co.*, 496 F. Supp. 3d 1029, 1040-41 (W.D. Tex. 2020) (collecting cases). Indeed, North Carolina law was also recently applied to find a similar virus exclusion clause unambiguous, leading the

court to grant a defendant's motion to dismiss. *See National Coatings & Supply v. Valley Forge Insurance Co.*, Case No. 5:20-CV-00275-M, 2021 WL 1009305 (E.D.N.C. Mar. 16, 2021).

Additionally, Plaintiff's attempt to distinguish "virus" and "pandemic" is unpersuasive. (*See* Docket Entry 20-1 at 6.) Although non-binding, other district courts have rejected similar arguments. *See Garmany of Red Bank, Inc. v. Harleysville Ins. Co.*, No. CV208676FLWDEA, 2021 WL 1040490, at *7 (D.N.J. Mar. 18, 2021) (unpublished) ("The term 'pandemic' simply defines the prevalence of a virus or disease. The fact that the COVID-19 virus has become a pandemic does not negate the simple fact that the Executive Orders were issued to curb the spread of the COVID-19 virus."); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Companies*, 498 F. Supp. 3d 1233, 1242 & n.6 (C.D. Cal. 2020) (Plaintiff's attempt to distinguish pandemic and virus "defies the plain and unambiguous text of the Policy and is 'akin to arguing that a coverage exclusion for damage caused by fire does not apply to damage caused by a very large fire.'"); *Boxed Foods Co., LLC v. California Cap. Ins. Co.*, 497 F. Supp. 3d 516, 523 (N.D. Cal. 2020), *as amended* (Oct. 27, 2020) ("the word 'pandemic' describes a disease's geographic prevalence, but it does not replace disease as the harm-causing agent"). For the same reasons, the undersigned finds Plaintiff's argument here unpersuasive.

## B. Regulatory Estoppel

Plaintiff next argues that Defendants should be estopped from enforcing the Virus Exclusion based on the doctrine of regulatory estoppel. (Docket Entry 20-1 at 8-9; *see also* Am. Compl. ¶ 108.) However, North Carolina has not adopted the specific doctrine of regulatory estoppel, nor do Plaintiffs argue that it has. *See 7th Inning Stretch LLC v. Arch Ins. Co.*, No. CV208161SDWLDW, 2021 WL 800595, at *3 n.6 (D.N.J. Jan. 19, 2021)

(unpublished) ("Regulatory estoppel . . . has not been adopted [in] North Carolina . . . . Therefore, Plaintiffs may not rely on regulatory estoppel to challenge the validity of the Policies' virus exclusion provision."). Instead, in *Wysong and Miles Co. v. Employers of Wausau*, this Court applied North Carolina law, which examines the conduct of both parties, and held that "[e]ven if [the plaintiff] could prove all of the elements of an estoppel claim, this is not a case in which estoppel could apply." 4 F.Supp.2d 421, 431-32 (M.D.N.C. 1998). The rationale behind this holding is that "[i]n North Carolina, insureds cannot use the doctrine of estoppel to bring within the coverage of a policy . . . risks expressly excluded from its terms." *Id.* at 432.

Here, even if Plaintiff properly alleges the facts necessary to satisfy the elements of estoppel required under North Carolina law, this Court cannot use estoppel to bring the alleged losses within coverage of the policy that expressly and unambiguously excludes claims due to viruses. *See id.* Therefore, it is not possible for Plaintiff to be granted relief on the grounds of estoppel.

### C. Application to Remaining Claims

The Virus Exclusion is neither ambiguous nor subject to estoppel as a matter of law. Thus, Plaintiff's alleged business income losses that were directly or indirectly caused by COVID-19, a virus, is not a "covered cause of loss" under the Policy. Indeed, the alleged losses fall within the Virus Exclusion thereby expressly barring coverage. Moreover, having found the Virus Exclusion applicable here, it is not necessary to examine the issue of whether COVID-19 constitutes "direct physical loss or damage" under the Business Income, Civil

11

Authority, and Extra Expense coverage provisions of the Policy.³ *See Nat'l Coatings*, 2021 WL 1009305, at *7 ("In finding that insurance coverage is barred by the Policy's exclusion provision, the court need not address Defendant's other arguments concerning whether Plaintiffs state plausible legal claims that their business interruption losses are covered under the six provisions identified in the Amended Complaint."); *Natty Greene's*, 2020 WL 7024882, at *4, n.4 ("The Court need not resolve questions about [business income and civil authority] coverage provisions since the virus exclusion applies regardless.").

## D. Reasonable Expectations

Plaintiff alleges that, in the event the language of the policy precludes coverage, there is nonetheless a public policy exception that should apply due to Plaintiff's "reasonable expectation" of coverage for losses due to COVID-19.⁴ (Docket Entry 20-1 at 21-22.) Plaintiff fails to cite binding authority supporting North Carolina's adoption of such a public policy exception that would apply in this context.⁵ Instead, North Carolina law continues to

---

³ To the extent Plaintiff also argues that the Virus Exclusion does not apply to claims for "expenses" noted in the Business Income, Civil Authority, and Extra Expense coverage forms (*see* Docket Entry 20-1 at 7-8), this argument is without merit. There is no separate coverage provision for "expenses" alone, and the "Extra Expense" coverage requires loss or damage caused by a "covered cause of loss." (*See* Policy at 49.) Again, the loss or damage here was the result of COVID-19, which is not a "covered cause of loss."

⁴ Plaintiff relies on a non-binding Third Circuit decision in *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497 (3d Cir. 2004) to support the application of the doctrine of reasonable expectations. The Third Circuit has applied this doctrine in cases "where the insured reasonably expected certain coverage, even when those expectations were in direct conflict with the unambiguous terms of the policy." *Id.* at 502. However, even this aspect of the doctrine is narrowly applied, *see Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005), and "[a]bsent sufficient justification . . . an insured may not complain that his or her reasonable expectations were frustrated by policy limitations that are clear and unambiguous." *Id.* (internal quotations and citation omitted).

⁵ North Carolina has recognized the reasonable expectation doctrine in the context of notice provisions in insurance contracts. The North Carolina Supreme Court held that

12

defer to clear and unambiguous contractual terms. *State v. Philip Morris USA Inc.*, 363 N.C. 623, 632, 685 S.E.2d 85, 91 (2009) ("[W]hen the terms of a contract are plain and unambiguous, there is no room for construction. The contract is to be interpreted as written[.]"). Here, the Policy unambiguously excludes coverage for losses resulting from a virus, and the Court is unable to rewrite the contract to expand coverage when it is expressly limited.

## IV. CONCLUSION

For the reasons stated above, the Virus Exclusion bars coverage for Plaintiff's alleged losses and damages resulting from COVID-19. As Plaintiff's claims for declaratory relief and breach of contract rely on coverage under the Policy, which as stated above is precluded by Court's conclusions on the Virus Exclusion, the claims as pled must be dismissed. *See Affinity Living Grp., LLC v. StarStone Specialty Ins. Co.*, 959 F.3d 634, 638 (4th Cir. 2020) (citing *Tillis v. Calvine Cotton Mills, Inc.*, 251 N.C. 359, 111 S.E.2d 606, 610 (1959)) ("Without a contractual duty to provide coverage, [an insurer] cannot breach the covenant of good faith and fair dealing."). The undersigned also notes that Plaintiff has already amended its Complaint once, and it appears under the circumstances, any further amendment would be futile. *See Vizza*

---

> Our decision [to adopt new modern rule of reasonable expectations] merely tells insurers that they are obligated to defend when the delay in receiving notice [of an accident] has not prejudiced their ability to investigate or otherwise defend the claim, an obligation which, in the reasonable expectation of the purchaser, should exist.

*Great Am. Ins. Co. v. C. G. Tate Const. Co.*, 303 N.C. 387, 396, 279 S.E.2d 769, 774 (1981). This deviation from the otherwise strict contractual approach, however, did not modify the "risk undertaken by the insurer." *Id.* In the instant case, Plaintiff would have the Court to alter the risk undertaken by Defendants based upon Plaintiff's own expectations. The undersigned finds no authority nor any reason to do so.

13

*Wash*, 496 F. Supp. 3d at 1043 (dismissing claim against insurance company with prejudice and finding that "neither of Plaintiff's prior amendments nor Plaintiff's briefing indicate that Plaintiff could fix the fundamental deficiencies with its claims" and that "the various theories of relief asserted by Plaintiff are all premised on the existence of insurance coverage that is *not* provided by the Policy"); *Cozzarelli v. Inspire Pharms., Inc.,* 549 F.3d 618, 630 (4th Cir. 2008) (holding that dismissal with prejudice was appropriate where "amendment would be futile in light of the [complaint's] fundamental deficiencies"). Thus, the Amended Complaint should be dismissed with prejudice. Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 17) should be **GRANTED** and Plaintiff's Amended Complaint be **DISMISSED WITH PREJUDICE**.

_____
Joe. L. Webster
United States Magistrate Judge

June 7, 2021
Durham, North Carolina

14

Case 1:20-cv-00853-NCT-JLW Document 25 Filed 06/07/21 Page 14 of 14